UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60715-Civ-ZLOCH
MAGISTRATE JUDGE P.A. WHITE

ALVIN WRIGHT,                          :

    Petitioner,                      :

v.                                      :          REPORT OF

WALTER A. McNEIL,[1]                    :          MAGISTRATE JUDGE

    Respondent.                       :
_____

    Alvin Wright, a state prisoner currently confined at Dade Correctional Institution at Florida City, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his conviction and sentence entered in Case No. 06-00666 in the Circuit Court of the Seventeenth Judicial Circuit of Florida at Broward County.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of the petition with attached exhibits and separate supporting memorandum of law, the Court has the respondent's response to an order to show cause.

    Wright raises the following grounds for relief:

---

[1]The pro se Petitioner in his petition for writ of habeas corpus names as the respondent Warden Harris and Florida State Attorney General Bill McCollum. Because Wright is incarcerated in the Florida Department of Corrections, Walter McNeil, Secretary of the Florida Department of Corrections, is actually the correct respondent. The Attorney General of the State of Florida has filed a response on behalf of Walter McNeil.

1.    His plea of guilty was involuntarily entered, because it
      was based upon ineffective assistance of trial counsel
      and he was not mentally competent to enter the guilty
      plea.

2.    His    sentence    is    the    product    of    prosecutorial
      vindictiveness.

The procedural history of this case is as follows. Wright was initially charged by Information with sexual battery upon a child, a capital offense. See Transcript of change of plea proceeding conducted on May 1, 2007, at 2-4, 25.[2] Wright entered a plea of not guilty to the crime charged and the case proceeded to trial before a jury. Id. at 2. On the day that trial proceedings were to commence, Wright entered into a negotiated plea agreement with the state. Id. at 2, 9. The plea agreement provided that the state would amend the Information to charge the reduced offense of sexual battery, familial custodial authority. Id. at 2-4. The agreement further provided that in exchange for Wright's plea of guilty to the reduced sexual battery offense, Wright would receive a sentence as an habitual offender to a term of imprisonment of fifteen years to be followed by a fifteen-year term of sexual offender probation. Id. at 2. See also Plea of Guilty to Criminal Charges in Circuit Court. (DE# 9; Ex. 13).

Wright executed a written plea of guilty in which he indicated that he was entering a plea of guilty to the offense of sexual battery, familial custodial authority. (Plea of Guilty to Criminal Charges in Circuit Court)(DE# 9; Ex. 13). The form specified the possible maximum sentence provided by law for the offense with which he was charged, and the sentence that he would receive in

_____

[2]A copy of the transcript of the change of plea proceeding was attached as an exhibit to the state's Response to the Defendant's Motion for Post Conviction Relief. (DE# 9; Ex. 4).

exchange for his guilty plea (i.e., a term of imprisonment of fifteen years followed by a fifteen-year term of sex offender probation). Id. at 1. Wright indicated that he understood the possible penalties. Id. Wright was also advised of all the constitutional rights he would be waiving by changing his plea to guilty and not proceeding to trial before a jury, and Wright again indicated that he understood. Id. at 1-2. Wright further stated that he was satisfied with the representation received from counsel regarding the entry of the guilty plea. Id. at 1. Wright indicated that he had read and understood the plea form which he had signed. Id.

On the same date that he executed the written plea, Wright appeared before the trial court for change of plea proceedings. See Transcript of change of plea proceeding conducted on May 1, 2007. Before the formal plea proceeding commenced, the state and trial counsel set out the terms of the negotiated plea offer with regard to the offense Wright had agreed to enter his guilty plea and the sentence to be imposed pursuant to the negotiated plea. Id. at 2-5. Wright was then sworn, and the trial court proceeded to conduct a meticulous plea colloquy. Id. at 5-29. The court first asked Wright if he had read and executed the written plea form, and if he had fully understood and agreed with everything stated in the form. Id. at 5-6. Wright answered affirmatively to the court's inquiries. Id. The trial court next asked Wright if he had had sufficient time to discuss the case with counsel before deciding to enter the guilty plea and whether he had discussed each and every right he was waiving by entering the guilty plea to which Wright responded: "Yes, sir." Id. at 6.

To ensure that Wright understood all that was transpiring and was in fact mentally competent to proceed with the plea proceeding,

the court conducted the following inquiry:[3]

| | |
|---|---|
| THE COURT: | Are ... you presently under the influence of alcohol? |
| DEFENDANT WRIGHT: | No, sir. |
| THE COURT: | Drugs? |
| DEFENDANT WRIGHT: | No. |
| THE COURT: | Medications? |
| DEFENDANT WRIGHT: | Yes. |
| THE COURT: | What medication? |
| THE COURT: | Sir, HIV medication, high blood pressure medication, hepatitis C medication and psych medication. |
| THE COURT: | Do you know which psych medication you take? |
| DEFENDANT WRIGHT: | Quantapin? I don't know. |
| THE COURT: | These medications, medications are all prescribed to you by a medical doctor, to the best of your knowledge? |
| DEFENDANT WRIGHT: | Yes, sir. |
| THE COURT: | Are you med compliant? In other words, do you take your medications whenever you're supposed to? |
| DEFENDANT WRIGHT: | Yes. |
| THE COURT: | When you take your meds, does it affect your ability to make an intelligent decision on your own behalf? |
| DEFENDANT WRIGHT: | Sometimes, sir. Yes, sir, it does. |
| THE COURT: | Now? |

---

[3]It is noted that the trial court simultaneously conducted plea proceedings with Wright and a second unrelated defendant. See Transcript of change of plea proceedings conducted on May 1, 2007. Only the portions of the transcript pertaining to Wright will be quoted in this Report with defendant Salter's responses omitted.

| | |
|---|---|
| DEFENDANT WRIGHT: | I didn't take them this morning. |
| THE COURT: | You're okay? |
| DEFENDANT WRIGHT: | Yes, sir. |
| THE COURT: | You understand everything that is going on? |
| DEFENDANT WRIGHT: | Yes, sir. |
| THE COURT: | You understand all of the conversations you have had with your lawyer? |
| DEFENDANT WRIGHT: | Yes, sir. |
| THE COURT: | You understand everything I'm saying? |
| DEFENDANT WRIGHT: | Yes, sir. |

Id. at 6-8.

The court next asked Wright if he believed entering the guilty plea was in his best interest. Id. at 8. When Wright indicated that he was entering the guilty plea because he believed he had no other choice but to do so, the trial court went on to fully and carefully explain to Wright that he did not have to proceed with the guilty plea and that he indeed had other choices. Id. at 8-9. The trial court advised Wright of his various options, such as, proceeding to trial, and stated as follows:

> In fact, your jury is on the way up and will be outside of this courtroom in a few minutes because we were here this morning, prepared to go to trial. That's your choice. If you go to trial, it is incumbent upon the State of Florida to come forward and prove you committed this offense beyond and to the exclusion of every reasonable doubt. If they do, the jury should find you guilty. If they don't, the jury has to find you not guilty.
>
> If the jury finds you not guilty, you're walking out the door.
>
> That's your choice.
>
> You also have the right to plead open to the Court.  If you

5

open plea to the Court, that means you're pleading guilty and a sentence would be imposed by the Court after a pre-sentence investigation would be prepared, a background review. Remember, if you do that, you would be pleading to the main charge, which, if I'm not mistaken, carries with it the potential penalty of life Florida State Prison.[4]

.        .        .

That's mandatory life. You do have options.

*If you don't think taking this plea today is in your best interests, don't do it. And I'm serious. I don't want you to do something that you think just isn't right for you. Go to trial. See what six people do.*

You have to remember, if they convict you, I have no discretion. I'm being told your sentence is mandatory life, which means I have to impose mandatory life.

(emphasis added). <u>Id</u>. at 9-10. After the trial court explained to Wright all of his possible options, without any question from the court, Wright stated: "I'll take the sentence." <u>Id</u>. at 10. To ensure that proceeding with the change of plea was truly Wright's choice, the court next asked: "You still want to go through with the negotiated plea from the State?" <u>Id</u>. Wright answered in the affirmative. <u>Id</u>. The court then again asked Wright if he believed that entering the negotiated guilty plea was at that time in his best interest and that was what he wanted to do, Wright unequivocally responded affirmatively to both questions. <u>Id</u>.

When asked if anyone had forced, pressured, or threatened him into entering the guilty plea, Wright responded in the negative. <u>Id</u>. at 11, 15. The trial court went on to advise Wright that he faced a term of imprisonment ranging from 114.15 months to 30 years, and that as an habitual felony offender his possible

---

[4]The prosecutor confirmed for the record that the original offense carried a penalty of mandatory life imprisonment and the trial court had no discretion to sentence otherwise with regard to that offense. <u>See</u> Transcript of change of plea proceedings conducted on May 1, 2007, at 10.

sentence was life imprisonment. <u>Id</u>. at 12. He was again advised that he face a mandatory life term, if he had been found guilty of the original offense. <u>Id</u>. Wright indicated that he understood the possible sentence that could have been imposed, if not for the negotiated plea agreement. <u>Id</u>. The court asked Wright if he was aware of the fact that the state had filed that day a notice to declare him an habitual offender and also asked Wright whether he had had the opportunity to discuss the ramifications of such sentencing with his lawyer. <u>Id</u>. at 12-3. After trial counsel indicated that she had received the notice and had discussed habitual offender sentencing with Wright, Wright also advised the court that had discussed habitualization and its impact on sentencing with counsel. <u>Id</u>. at 13.

The court also conducted the following inquiry with Wright to make certain that Wright understood the ramifications of entering that day a guilty plea:

| THE COURT: | You ... understand by taking [this plea] today, you're effectively telling your lawyer[] not to conduct any investigation or further investigation into the facts of your case[], participate or participate further in the discovery process, take any depositions or additional depositions of any witnesses that may be involved in your case[] or present at trial any legal defenses you may be entitled to under the law, and you ... understand that? |
|---|---|
| DEFENDANT WRIGHT: | Yes. |
| THE COURT: | And you ... had an opportunity today and other occasions to talk to your lawyer[] as it relates to prospective trial strategy, tactics, legal defenses that may be available to you in the event you did go to trial? |
| DEFENDANT WRIGHT: | Yes. |

```
THE COURT:              You ... understand that you were ...
                        here today for trial. And that jury
                        outside could easily be yours....

DEFENDANT WRIGHT:       Yes, sir.

THE COURT:              You ... understand by taking th[is]
                        plea[] today, you're ... forever giving
                        up your opportunity to present any
                        legal defenses that may exist under the
                        law to any fact finder, either to a
                        judge or to a jury?

DEFENDANT WRIGHT:       Yes, sir.
```

Id. at 13-4. When asked if anyone, including his lawyer, had promised him anything other than what had just been explained to him, Wright answered, "No, sir." Id. at 14.

The court further reviewed with Wright his various constitutional rights that he would be waiving by entering the guilty plea, which included the right to be presumed innocent and proceed to trial before a jury with all the rights associated with a trial, and Wright stated that he understood. Id. at 16-7. When asked if he had discussed those same rights with his lawyer and whether he had the opportunity to review those same rights included in the waiver form, Wright again answered affirmatively to the court's questions. Id. at 17-8. The court asked Wright if he had read and then placed his initials next to each right listed on the waiver form and, if so, was that an indication that he had in fact read and understood each paragraph of the form. Id. at 18. Wright once again unhesitatingly answered in the affirmative to the inquiries and stated that he wanted to waive his constitutional rights in order to dispose of his case by a guilty plea. Id. Before accepting the guilty plea, the trial court asked Wright if he had any questions regarding the rights he was waiving or the sentence to be imposed pursuant to the negotiated plea. Id. at 18-9. Wright answered, "No, sir," to both questions. Id.

When the court asked trial counsel whether she was stipulating to a factual basis for the plea based upon the sworn probable cause affidavit, counsel answered in the affirmative. Id. at 19. The state then proffered a factual basis for the plea, stating that the evidence which would have been admitted at trial would have shown that Wright committed sexual acts upon his granddaughter. Id. at 20. The evidence would have included the testimony from the victim, the victim's mother and a physician's assistant. Id. It was next established that Wright qualified as an habitual felony offender. Id. at 22-3. The trial court then accepted Wright's guilty plea, finding it freely, voluntarily, knowingly and intelligently made, and supported by a factual basis predicated upon the proffer by the state and sworn probable cause affidavit. Id. at 23-4.

However, before adjudicating Wright guilty of the subject offense and imposing sentence, acting in the abundance of caution, the trial made the following specific findings of fact to clarify the record:

> The Court would further find during the course of [the] colloquy, [Wright] raised certain reservations about that, about not really wanting to take the plea.
>
> Understanding that the jury was outside, that the original charge was a capital sexual battery for which the sentence of the Court would be mandatory life in the event he was convicted and in consideration of the State's reducing the charge to a first degree felony, [Wright] believes it was in his best interests to resolve the case as by the offer of the State.

Id. at 25. After the above-quoted statement, the court asked Wright: "That's a correct statement, Mr. Wright?" Id. Wright responded without hesitation, "Yes, sir." Id. The court then adjudicated Wright guilty of the subject offense and sentenced him pursuant to the terms of the negotiated plea agreement. Id. at 25-6.

9

Before concluding the proceeding, the following exchange took place between the court, trial counsel and Wright:

| | |
|---|---|
| THE COURT: | Additionally, the Court is making part of the court file the DNA addendum to plea of guilty or no contest to criminal charges in circuit court, executed in open court, dated this day by [trial counsel] Ms. Carpenter on behalf of the defendant; the defendant, Mr. Wright, himself; and [prosecutor] Ms. Zack. And it represents that defense counsel has reviewed the discovery disclosed by the State, including a listing or description of physical items of evidence, that she has reviewed with her client the nature of the evidence disclosed through discovery, and she's personally unaware of any physical evidence for which DNA testing might exonerate Mr. Wright.

Those were discussed with you? |
| MR. WRIGHT: | Yes, sir. |
| THE COURT: | Mr. Wright has indicated he has discussed the above disclosures with his attorney and he agrees to those representations that were just made. That's correct? |
| MR. WRIGHT: | Yes, sir. |
| THE COURT: | And Ms. Zack, as the prosecutor in the case, indicates she too is personally unaware of any physical evidence for which DNA testing may exonerate [Wright].

Anything else we need to address with regard to Mr. Wright? |
| MS. CARPENTER: | No, sir. |

Id. at 27-8.


Wright did not prosecute a direct appeal from his conviction and sentence. (Petition at ¶8)(DE# 1). However, approximately seven days after the entry of his guilty plea, Wright wrote a pro se

10

letter to the court, seeking to withdraw his plea. (DE# 9; Ex. 1).
Wright stated that his plea had been uninformed and made without
the advice of competent legal counsel. Id. The trial court
summarily denied the request. (DE# 9; Ex. 2). Soon thereafter,
Wright filed a pro se motion for post conviction relief pursuant to
Fla.R.Crim.P. 3.850, challenging his conviction and sentence as
unlawful on essentially the same grounds raised in this federal
petition. (DE# 9; Ex. 3). The state file a response, asserting that
Wright was not entitled to postconviction relief in that he failed
to demonstrate that he received ineffective assistance of trial
counsel in connection with the entry of his guilty plea pursuant to
the standard established in Strickland v. Washington, 466 U.S. 668
(1984) and his vindictive prosecution claim was conclusory. (DE# 9;
Ex. 4). The trial court summarily denied the motion for the reasons
expressed by the state in its response. (DE# 9; Ex. 5). Wright
appealed the trial court's ruling, and the Florida appellate court
per curiam affirmed the denial of postconviction relief without
written opinion. Wright v. State, 977 So. 2d 591 (Fla. 4 DCA
2008)(table).

While his appeal was pending from the initial Rule 3.850
motion, Wright filed a second pro se Rule 3.850 motion, raising new
grounds of ineffective assistance of trial counsel with regard to
the entry of his guilty plea and resultant sentence. (DE# 9; Ex.
7). The trial court denied the motion without prejudice, because it
lacked the requisite oath. (DE# 9; Ex. 8). In compliance with the
trial court's directive, Wright filed a sworn third pro se Rule
3.850 motion, raising the same grounds presented in the second
motion for post-conviction relief. (DE# 9; Ex. 9). The state filed
a response, asserting that the motion should be denied as an
improper successive motion. (DE# 9; Ex. 10). The state further
argued that the motion should also be denied as meritless in that

the ineffective assistance of trial counsel claims were refuted by the record and Wright had failed to satisfy the prejudice prong of Strickland, supra. Id. The trial court summarily denied relief, finding the motion successive as well as raising claims that had no merit for the reasons expressed by the state in its response. (DE# 9; Ex. 11). The trial court's ruling was *per curiam* affirmed without written opinion by the appellate court. Wright v. State, 983 So.2d 594 (Fla. 4 DCA 2008)(table).

Shortly before the most-recent state appellate court proceedings had concluded, Wright came to this Court filing the instant federal pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The respondent rightfully does not challenge this petition as untimely filed. See 28 U.S.C. §2244(d)(1)-(2). The respondent acknowledges that certain challenges raised in the subject petition have been fairly presented to the state courts and are properly exhausted, see 28 U.S.C. §2254(b),(c),[5] warranting review on the merits. The respondent, however, also asserts that certain subclaims raised in ground one have not been exhausted and are, therefore, subject to a prospective procedural bar. This Court rejects the respondent's procedural defenses in that careful review of the record in this case indicates that Wright has essentially raised in the state courts all the challenges to his conviction and

---

[5]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. Baldwin v. Reese, 541 U.S. 27, 29-30 (2004)(citing Duncan v. Henry, 513 U.S. 364, 365 (1995)(per curiam)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). See also O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979).

sentence he makes here. Consequently, all claims, and subclaims, will be addressed on the merits.[6]

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). Under AEDPA's "highly deferential" standard of review, <u>Parker v. Sec. Dept. of Corrections</u>, 331 F.3d 764, 768 (11 Cir. 2003), a federal court may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)(majority opinion by

---

[6]Even if some or part of the claims presented here are technically unexhausted, since the claims of this petition are meritless, it will best serve the interest of judicial economy not to further belabor the exhaustion and related procedural bar issues and to exercise the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. <u>See</u> 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

O'Connor, J.).

"[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. See Wright v. Sec. of Dep't of Corr., 278 F.3d 1245, 1255 (11 Cir. 2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d 840, 844 (11 Cir. 2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2053 (April 21, 2008).

Wright claims in ground one that his plea was involuntarily entered because it was based upon ineffective assistance of trial counsel. Specifically, he alleges that his lawyer only once visited him in the jail and, during that visit which took place in May 2006, counsel led him to believe that she had secured a plea agreement for ten years' imprisonment with no following term of sexual offender probation. He states that he did not see her again until eleven months later for the subject plea proceedings which carried a harsher sentence. He further alleges that his lawyer failed to properly investigate the facts of the case and, if she had done so, the investigation would have revealed that the state had no tangible evidence against him and that the evidence would

14

have only revealed that he was a loving grandfather. Wright also maintains that the state was "counting on the petitioner's medicated, involuntary, incompetency guilty plea" to obtain a conviction. (Memorandum of Law at 3)(DE# 2). Wright is not entitled to federal habeas corpus relief on this claim.

The traditional rule is that a defendant's plea of guilty made knowingly, voluntarily, and with the benefit of competent counsel, waives all nonjurisdictional defects in the proceedings. <u>United States v. Broce</u>, 488 U.S. 563 (1989). <u>See also</u> <u>Barrientos v. United States</u>, 668 F.2d 838, 842 (5 Cir. 1982). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

<u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). Exceptions to the general rule are those cases which are constitutionally infirm because the government has no power to prosecute them at all, which is not applicable to this case. <u>See</u> <u>Broce</u>, 488 U.S. at 574-575.

Thus, a voluntary guilty plea constitutes a waiver of all non-jurisdictional defects in the proceeding up to that point. The waiver also extends to claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. <u>See</u> <u>Bradbury v. Wainwright</u>, 658 F.2d 1083, 1087 (5 Cir. 1981), <u>cert</u>. <u>denied</u>, 456 U.S. 992 (1982). <u>See also</u> <u>United States v. Bohn</u>, 956 F.2d 208, 209 (9 Cir. 1992)(per curiam)(holding that pre-plea ineffective assistance of counsel claims are also waived by guilty plea). Petitioner's claim that counsel failed to conduct a proper investigation into the facts of the case and failed to pursue any

15

defenses do not relate to the voluntariness of the plea and, even if his claims could be so construed, there is absolutely no indication in the record that his plea of guilty was not entered knowingly and voluntarily and full review of the record clearly indicates otherwise. See Transcript of change of plea proceeding conducted on May 1, 2007.

Further, during the plea colloquy, Wright expressly apprised the court that he understood that by entering the negotiated guilty plea he was waiving his right to present any legal defenses to the crime charged and that his lawyer would proceed no further with investigating and preparing the case for trial. Sworn statements made in connection with the entry of the guilty pleas carry a strong presumption of truthfulness and pose a formidable barrier in subsequent collateral proceedings. See Blackledge v. Allison, 431 U.S. 63, 74 (1977); Kelley v. Alabama, 636 F.2d 1082, 1084 (5 Cir. Unit B. 1981). It is noted that, if not for the entry of the guilty plea, the case would have  proceeded to trial before a jury on that day in that counsel had been notified the afternoon before that the trial was scheduled for the following day. See Transcript of change of plea proceeding conducted on May 1, 2007, at 2. The record as set forth above reveals that, contrary to Wright's assertion, by the time of the plea proceeding, counsel had conducted an investigation into the facts of the case and, at the minimum, had reviewed the discovery disclosed by the state, which included physical items of evidence. Trial counsel discussed such discovery with Wright, as acknowledged by Wright during the plea proceeding.

Even if Wright's ineffective assistance of counsel claims were reviewable, Wright would not be entitled to relief in that his underlying claims are meritless. See Strickland v. Washington, 466

U.S. 668 (1984). <u>See also</u> <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985).[7]
Wright's assertion that he had only met with his lawyer on one
occasion and that was eleven months before the plea proceeding is
self-serving and wholly conclusory, warranting no further
consideration by this Court.[8] Further, the claim is clearly refuted
by the record. During the plea colloquy, the trial court expressly
asked Wright if he had had an opportunity "*today and other
occasions*" to talk to his lawyer regarding the plea agreement and
whether he understood all of the "*conversations*" he had with his
lawyer. <u>See</u> Transcript of change of plea proceeding conducted on
May 1, 2007, at 6, 8. Wright responded affirmatively to the court's
inquiry. <u>Id</u>. The trial court also specifically asked Wright: "And
you ... had an *opportunity today and other occasions* to talk to

---

[7]In order to prevail in this habeas corpus proceeding on his claim of
ineffective assistance of counsel, the petitioner must make a particularized
showing of an identifiable lapse in counsel's performance which falls below
constitutional standards, and the petitioner must establish that the error was
prejudicial, that is, but for counsel's error, there is a reasonable probability
that the ultimate result would have been different. <u>Strickland v. Washington</u>, 466
U.S. 668 (1984). Failure to make the required showing of either deficient
performance or sufficient prejudice defeats the ineffectiveness claim. <u>Id</u>.
Accordingly, the court need not address both prongs of the <u>Strickland</u> standard
if the complainant has made an insufficient showing on one. <u>Id</u>. at 697. In
assessing whether a particular counsel's performance was constitutionally
deficient, courts indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable assistance. <u>Id</u>. at 689. Further, a claim of
ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S.
at 698. In the context of a case in which guilty pleas are entered, application
of the second prong of the two pronged standard of <u>Strickland</u> requires a showing
that there is a reasonable probability that but for counsel's errors, the
petitioner would not have pleaded guilty and would have insisted on going to
trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985).

[8]Absent supporting evidence in the record, a court cannot consider a habeas
petitioner's mere assertions on a critical issue in his <u>pro</u> <u>se</u> petition to be of
probative value. <u>See</u> <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11 Cir.
1991)(recognizing that a petitioner is not entitled to habeas relief "when his
claims are merely 'conclusory allegations unsupported by specifics' or
'contentions that in the face of the record are wholly incredible'" (citation
omitted)). <u>See also</u> <u>Ross v. Estelle</u>, 694 F.2d 1008, 1011-12 (5 Cir. 1983).
Moreover, bare and conclusory allegations of ineffective assistance of counsel
which contradict the existing record and are unsupported by affidavits or other
indicia of reliability, are insufficient to require a hearing or further
consideration. <u>See</u> <u>United States v. Ammirato</u>, 670 F.2d 552 (5 Cir. 1982); <u>United
States v. Sanderson</u>, 595 F.2d 1021 (5 Cir. 1979).

your lawyer[] as it relates to prospective trial strategy, tactics, legal defenses that may be available to you in the event you did go to trial." (emphasis added). <u>Id</u>. at 13. Again, Wright responded with a simple, "Yes." <u>Id</u>. at 14. At no time whatever during the change of plea proceedings or otherwise did Wright apprise the trial court of any lack of communication with trial counsel and any failure on the part of trial counsel to adequately discuss the case with him throughout the pendency of the case.

Wright's allegation that counsel had early in the case led him to believe that the state had offered him a ten-year term of imprisonment with no term of probation to follow is also conclusory with no support in the record, other than Wright's own assertion.[9] The claim is additionally belied by the record. During the change of plea proceeding, Wright was asked by the trial court whether anyone, including his lawyer, had made him any "promises, any representations or guarantees to the outcome of [his case] other than what we are talking about here in open court?" <u>Id</u>. at 14. Wright unequivocally answered, "No, sir." <u>Id</u>. at 14, 15. When the trial court asked Wright if he had any questions regarding the sentence to be imposed pursuant to the negotiated plea, Wright simply responded, "No, sir." <u>Id</u>. at 19. As indicated above, such statements are presumed truthful in subsequent collateral proceedings. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. at 74; <u>Kelley v. Alabama</u>, 636 F.2d at 1084.

Even if this Court were to accept as true Wright's allegation that before he had entered the subject guilty plea, defense counsel had somehow conveyed to him that he would receive a lesser sentence, it cannot be said that defense counsel promised or

_____

[9]Wright has not supported his claim of an earlier plea offer with any evidence whatever, such as, affidavits from trial counsel and/or the prosecutor.

guaranteed such a sentence. A defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary. See United States v. Stumpf, 827 F.2d 1027, 1030 (5 Cir. 1987). Also, where a defendant was aware of a plea offer, was fully informed of the nature of the charges and potential sentences, and did not object to its rejection, his claim of ineffective assistance of counsel regarding the plea offer fails. Diaz v. United States, 930 F.2d 832, 834-35 (11 Cir.1991). Moreover, the claim is incredible based upon the record. It was not until the plea proceeding that the state agreed to amend the Information in order to dismiss the original offense of sexual battery on a child, a capital offense which carried a mandatory life term, and instead proceed on the reduced offense of sexual battery, familial custodial authority, which carried a maximum thirty-year sentence with the possibility of non-mandatory life imprisonment as an habitual offender. A ten-year plea offer with no provision for sex offender probation under the circumstances of this case where Wright committed a sexual battery with his granddaughter as the victim is not believable.

Wright also appears to maintain that his plea of guilty was involuntarily entered because he was mentally incompetent to enter the guilty plea based upon his then-long standing daily use of psychotropic medications.[10] It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering

---

[10]Psychotropic drugs are a large class of drugs which affect mental activity. These drugs are used to treat serious psychotic disorders. They reduce the symptoms of hallucinations, delusions, paranoid ideation, and disturbed mental thought in patients. "The purpose of the drugs is to alter the chemical balance in a patient's brain, leading to changes, intended to be beneficial, in his or her cognitive processes." Washington v. Harper, 494 U.S. 210, 229 (1990). Many medical authorities consider these drugs to be the primary treatment for acute and chronic mental disorders. See Mills v. Rogers, 457 U.S. 291, 293 n. 1 (1982).

such a plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984). Such is the case here.

The mere fact that Wright suffered with mental ailments before and/or after his conviction here, which includes the time of the change of plea proceeding, is insufficient in itself to show that Wright was prevented by any alleged lack of mental capacity from lawfully entering the guilty plea. In other words, petitioner's mental condition, which apparently requires treatment with psychotropic medications, does not establish that he was mentally incapacitated during the plea proceeding. The fact that petitioner may have at times needed psychotropic medications weighs more in favor of him being able to function than not. <u>See</u> <u>Brown v. McKee</u>, 232 F.Supp. 761, 768 (E.D.Mich. 2002). The court's inquiry during the plea proceeding indicates that Wright had been receiving treatment for his mental health condition and had been for the most part compliant. While there are potential side-effects associated with the taking of anti-psychotic medications, as is the case with any type of medication, review of the record as a whole appears to indicate that any possible side effects suffered by Wright did not impair his ability to proceed with the guilty plea. When Wright indicated to the trial court that his anti-psychotic medications at times affected his ability to make an intelligent decision, the trial court thoroughly questioned Wright regarding his capability and his understanding of what was transpiring at the plea

20

proceeding, and his understanding of all conversations he had with his lawyer. Wright answered that he had such sufficient understanding. It is also pointed out that review of the transcript of the plea proceeding in its entirety indicates that Wright was coherent and he appropriately responded to all of the court's questions during the proceeding. The fact that Wright may not have taken his medication the particular day of the plea proceeding does not indicate a lack of mental competency.

Finally, Wright's assertion that his guilty plea was rendered involuntary because he only entered the guilty plea out of fear of a mandatory life sentence if convicted on the original offense is meritless. As the above-reviewed transcript of the plea proceeding indicates, when Wright expressed the belief that he had no choice but to proceed with the guilty plea, the trial court went to great pains to ensure that Wright was entering a guilty plea knowingly and voluntarily and that Wright believed that it was in his best interest to do so. The trial court judge fully apprised Wright of all possible options in his case, which were to proceed to jury trial that same day on the original charge, enter an open plea of guilty to the court to the original charge with no negotiated sentence and a mandatory sentence of life imprisonment, or enter a guilty plea pursuant to the negotiated plea agreement to the reduced charge. Wright was also fully advised of all the possible sentences he could receive depending upon which option he selected. It was only after Wright assured the trial court that he wanted to proceed with the plea colloquy and enter a guilty plea in that he believed it was in his best interest to do so did the trial court go forward with the plea proceeding. Thus, the fact that Wright may have based his decision to enter a guilty plea out of "fear" of a possible mandatory life sentence if he was convicted does not make his plea involuntarily entered.  A reduced sentence to be imposed

pursuant to a plea versus a greater one that could be imposed upon a finding of guilt is certainly one, if not the most important, factor for any defendant to consider when deciding whether to enter into a plea agreement with the state and waive his right to a jury trial. The trial court and/or counsel in no way threatened, forced, or coerced Wright into entering the guilty plea, as he himself acknowledged during the plea proceeding.

It cannot be overlooked that the record indicates that there was more than sufficient evidence to sustain a finding of guilt on the charged crime. If Wright had proceeded to trial and been found guilty of the originally charged capital sexual battery offense, he would have received a mandatory term of life imprisonment. In return for his plea, Wright received a much-reduced total sentence than what he otherwise might have received. The entry of the plea agreement was in the best interest of the petitioner, and he received a benefit from entering into the negotiated plea agreement. In conclusion, it is clear from the record when viewed as a whole that the petitioner received able representation more than adequate under the Sixth Amendment standard with regard to the guilty plea and resultant sentence. Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984).

Thorough review of the record in this case yields no suggestion that the trial court's findings of fact, albeit implicit findings, made during the change of plea and postconviction proceedings, which findings were approved by the state appellate court, are not supported by the record or were otherwise deficient and the findings must therefore be presumed correct.[11] 28 U.S.C.

---

[11]Federal courts in habeas corpus proceedings are required to grant a presumption of correctness to state court's explicit and implicit findings of fact, if supported by the record. See 28 U.S.C. §2254(e)(1). See also Green v. Johnson, 160 F.3d 1029, 1045 (5 Cir. 1998), cert. denied, 525 U.S. 1174 (1999).

§2254(e). When presuming the findings of fact as correct, as this
Court must, it is apparent from review of the record as a whole
that Wright's guilty plea was entered freely, voluntarily and
knowingly with the advice received from competent counsel.[12]

Accordingly, the trial court's determinations during the
postconviction proceedings that Wright was not entitled to relief
on the same or essentially the same claims raised in this federal
proceeding, which determinations were affirmed by the state
appellate court, were not in conflict with clearly established
federal law or based on an unreasonable determination of the facts
in light of the evidence presented in the state court proceeding.
Relief must be denied pursuant to 28 U.S.C. §2254(d).  <u>Williams v.
Taylor</u>, 529 U.S. 362 (2000).

Wright claims in ground two that his sentence is the product
of prosecutorial vindictiveness on the part of the state. He
alleges that due to his rejection of the initial plea offer, he
received a greater sentence. First, as indicated above, the
underlying claim that there was an earlier plea offer is wholly
conclusory and unsupported by the record rendering it unworthy of
habeas corpus review. Moreover, by entering the guilty plea, the

Thus, even where the state courts make no express findings, federal courts
reviewing petitions for habeas corpus are entitled to "reconstruct the findings
of the state trier of fact, either because his view of the facts is plain from
his opinion or because of other indicia." <u>Fike v. James</u>, 833 F.2d 1503, 1505-06
(11 Cir. 1987), <u>quoting</u>, <u>Townsend v. Sain</u>, 372 U.S. 293, 314 (1963), overruled
in part on other grounds, <u>Kenney v. Tamayo-Reyes</u>, 504 U.S. 1 (1992).

[12]While the question of whether constitutional rights have been effectively
waived is governed by federal standards, <u>Boykin v. Alabama</u>, 395 U.S. at 238
(1969), factual findings underlying such a conclusion are entitled to the
statutory presumption of correctness on habeas corpus review if they are fairly
supported by the record. <u>See Marshall v. Lonberger</u>, 459 U.S. 422, 431 (1983)
(applying former §2254(d) in the context of determining the voluntariness of a
guilty plea). An issue does not lose its factual character merely because its
resolution is dispositive of the ultimate constitutional question. <u>Miller v.
Fenton</u>, 474 U.S. 104, 113 (1985).

23

claim has been waived. As indicated above, "[a] guilty plea, since it admits all the elements of a formal criminal charge, waives all nonjurisdictional defects in the proceedings against a defendant." United States v. Jackson, 659 F.2d 73, 74 (11 Cir. 1981), *cert. denied*, 445 U.S. 1003 (1982), *quoting* United States v. Saldana, 505 F.2d 628, 629 (5 Cir. 1974). The vindictiveness claim is nonjurisdictional, and, as such, is waived by Wright's otherwise knowing and voluntary guilty plea which is supported by a factual basis. See United States v. Fairchild, 803 F.2d 1121, 1124 (11 Cir. 1986).

Even if not waived by the guilty plea, Wright would not be entitled to relief on his claim of prosecutorial vindictiveness. A prosecution is vindictive if it is undertaken in retaliation for the exercise of a legally protected statutory or constitutional right. United States v. Barner, 441 F.3d 1310, 1316 (11 Cir. 2006). "A presumption of prosecutorial vindictiveness is generally warranted only in a post-conviction setting, such as when a defendant successfully attacks his conviction on appeal, and then receives a harsher sentence on retrial." United States v. Perry, 335 F.3d 316, 324 (4 Cir. 2003). But, in the pre-trial plea negotiation context, it is not enough to show the defendant might face additional criminal penalties if he or she rejects a plea offer. See generally Barner, 441 F.3d at 1316. ("Even though the prosecutor added the charge in an attempt to persuade the defendant not to exercise his right to stand trial, the Supreme Court held there was no 'punishment or retaliation' and hence no vindictiveness or due process violation in plea bargaining 'so long as the accused [was] free to accept or reject the prosecution's offer.'")(*quoting* Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Here, Wright was free to reject the state's offer(s) and proceed to trial. He voluntarily and

24

intelligently elected to change his plea to guilty to the reduced charge to receive a much lesser sentence than he could have received otherwise. While the sentence may have been greater than the alleged initial offer, a defendant should realize that a plea offer made on the eve of trial proceedings certainly may carry a harsher sentence than one made much earlier in the proceedings.

The state trial and appellate courts' determinations that Wright was not entitled to relief during the postconviction proceedings on his claim of prosecutorial vindictiveness were not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

Finally, Petitioner's request for an evidentiary hearing on his claims should be denied. Section 28 U.S.C. §2254(e)(2) provides that a court shall not conduct an evidentiary hearing unless a petitioner failed to develop a claim in state court, provided that the claim relies on a new rule of constitutional law or on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and the facts would "establish by clear and convincing evidence" the petitioner's actual innocence. See Williams v. Taylor, 529 U.S. 420, 433-37 (2000). Wright has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing or that he is factually innocent of the subject offense.

It is therefore recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 27th day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Alvin Wright, Pro Se
     DC# 845201
     Dade Correctional Institution
     19000 S.W. 377th Street
     Florida City, FL 33034-6499

     James J. Carney, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428